# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

CARLOS BEAUFRAND, BONNIE MEYER,
JACQUELINE OLSON, and
MARY SCHNEIDER, Individually and on
Behalf of All Other Similarly Situated,

    Plaintiffs,

  v.                                          Case No. 18-CV-214

PORTFOLIO RECOVERY ASSOCIATES, LLC

    Defendant.

## DECISION AND ORDER ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

On May 9, 2018, plaintiffs Carlos Beaufrand, Bonnie Meyer, Jacqueline Olson, and Mary Schneider (the "Plaintiffs") filed an amended class action complaint against Portfolio Recovery Associates, LLC ("PRA"), alleging that PRA sent debt validation notices that violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"). (Docket # 14.) On May 24, 2018, PRA submitted its answer, (Docket # 17), and also moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) (Docket # 18). For the reasons below, I will deny the motion as to Count I, but grant the motion for all other counts. The Plaintiffs also filed two motions for leave to submit additional authority pursuant to Civil Local Rule 7(h) (Docket ## 22, 24), which will be granted.

## BACKGROUND

1. *Count I: Plaintiff Beaufrand*

The amended complaint alleges that Plaintiff Beaufrand received a collection letter from PRA dated March 30, 2018 that contained a validation notice as follows:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

(Docket # 14 Ex. A.) On the second page, near the top under several other line items, the letter contained this line item: "DISPUTES: Call 1-800-772-1413 or write to: Portfolio Recovery Associates, LLC, Disputes Department, 140 Corporate Blvd., Norfolk, VA 23502" and "DISPUTES E-MAIL ADDRESS: PRA_Disputes@portfoliorecovery.com." (*Id.*)

On April 3, 2018, four days after the initial notice, the amended complaint alleges that PRA sent another letter to Beaufrand attempting to collect the same debt. (Docket # 14 Ex. B.) The letter contained no validation notice. The second page contained information about disputes identical to that in the initial letter, directing the debtor to "Call 1-800-772-1413" or write to PRA at its Disputes Department address. (*Id.*)

Count I claims that "[b]y representing that the consumer may effectively communicate their dispute by telephone, Exhibits A and B contradict and overshadow the disclosure of the consumer's rights to obtain verification of the debt and the name and address of the original creditor." (Docket # 14 ¶ 105.) Further, "Exhibits A and B mislead the consumer to believe he may effectively communicate a dispute by telephone rather than in writing." (*Id.* ¶ 106.)

Count I alleges that the notices thus violated §§ 1692e, 1692e(10), 1692f, 1692g(a)(4), 1692g(a)(5), and 1692g(b). (*Id.* ¶ 107.)

  2. *Counts II and III: All Plaintiffs*

The amended complaint alleges that between February 2017 and March 2018, the Plaintiffs each received letters with debt validation notices from PRA. (Docket # 14 ¶¶ 16–78, Exs. A, C, D, F.) Each letter had PRA's logo and "Portfolio Recovery Associates, LLC" in large, bold letters at the top left. The address of Portfolio Recovery Associates was not part of the header. Immediately underneath PRA's name and logo was a block of line items identifying the "Seller," the "Merchant" (if applicable) the "Original Creditor," and the "Original Creditor Address." Finally, the notices listed the "Creditor to Whom Debt is Owed" (Portfolio Recovery Associates, LLC) and the account number and current balance.



(*Id.* Ex. A.)



(*Id.* Ex. C.)



> **Portfolio Recovery Associates, LLC**
>
> Seller: SYNCHRONY BANK
> Merchant: JC PENNEY
> Original Creditor: SYNCHRONY BANK
> Original Creditor Address: P.O. BOX 965033, ORLANDO FL 32896-5033
> Creditor to Whom Debt is Owed: PORTFOLIO RECOVERY ASSOCIATES, LLC
> Account Number: ██████████5541
> Current Balance: $816.29
>
> July 10, 2017

(*Id.* Ex. D.)

> **Portfolio Recovery Associates, LLC**
>
> Seller: COMENITY BANK FORMERLY KNOWN AS WORLD FINANCIAL NETWORK BANK
> Merchant: BOSTON STORE
> Original Creditor: COMENITY BANK
> Original Creditor Address: ONE RIGHTER PKWY SUITE 100, WILMINGTON DE 19803
> Creditor to Whom Debt is Owed: PORTFOLIO RECOVERY ASSOCIATES, LLC
> Account Number: ██████████0196
> Current Balance: $676.85
>
> February 24, 2017

(*Id.* Ex. F.)

The body of each letter welcomed the recipient to PRA, explained that PRA had purchased the recipient's account, and instructed the recipient that "[a]ll future payments for this account, including credit counseling service payments, should be directed to us." (*Id.* Exs. A, C, D, F.)

PRA's address was located in two places on the front of the letter: approximately a third of the way down the page inside a box under the header "Various Payment Options Available Including," and at the bottom of the page as the mailing address on the detachable payment slip. (*Id.*) PRA's name and address were also located in several places near the top of the second page, which contained the following line items:

> **MAKE ALL CHECKS PAYABLE TO**: PORTFOLIO RECOVERY ASSOCIATES, LLC
> **SEND ALL PAYMENTS TO**: PORTFOLIO RECOVERY ASSOCIATES, LLC, P.O. Box 12914, Norfolk, VA 23541
> **COMPANY ADDRESS**: PORTFOLIO RECOVERY ASSOCIATES, LLC, 120 Corporate Boulevard, Norfolk, VA 23502

The letter to Plaintiff Beaufrand also contained the following line items:

> **DISPUTES**: Call 1-800-772-1413 or write to: Portfolio Recovery Associates, LLC, Disputes Department, 140 Corporate Blvd., Norfolk, VA 23502
> **DISPUTES E-MAIL ADDRESS**: PRA_Disputes@portfoliorecovery.com

The letters to Plaintiffs Meyer, Olson, and Schneider contained the following line items:

> **DISPUTES CORRESPONDENCE ADDRESS**: PORTFOLIO RECOVERY ASSOCIATES, LLC Disputes Department, 140 Corporate Boulevard, Norfolk, VA 23502
> **DISPUTES DEPARTMENT E-MAIL ADDRESS**: PRA_Disputes@portfoliorecovery.com

The Plaintiffs claim that listing the original creditor's address in the block of line items at the top of the first page violates the FDCPA because it is "a material false, misleading, or confusing statement." (*Id.* ¶¶ 24, 50, 61, 64.) The Plaintiffs allege that listing the original creditor's name and address in this prominent way could mislead recipients into sending payments or disputes to the original creditor rather than to PRA. (*Id.* ¶¶ 79–92.)

   3. *Count IV: Plaintiff Schneider*

The amended complaint alleges that Plaintiff Schneider received a letter from the merchant, Boston Store, on December 28, 2016 notifying her that her account, which had been issued and owned by Comenity Bank, had been closed and charged-off as of December 12. (*Id.* Ex. E.) It also notified her that "the new owner of the account, Portfolio Recovery Associates, LLC is entitled to pursue the collection activities to collect the unpaid balances on your charged-off account, now due to Portfolio Recovery Associates, LLC. All future communications regarding this account will be initiated by Portfolio Recovery Associates, LLC and/or their collection servicers." (*Id.*) The letter notified Schneider that all further questions, correspondence, and outstanding payments should be directed to PRA at the provided address. (*Id.*)

Nearly two months later, Schneider received a letter from PRA dated February 24, 2017 attempting to collect the same debt. (*Id.* Ex. F.) The notice said: "PRA, LLC purchased account [redacted]0198 on 12/29/2016. All future payments and correspondence for this account, including credit counseling service payments, should be directed to us." (*Id.*)

The amended complaint alleges that PRA's letter violates the FDCPA by falsely stating the date PRA purchased Schnieder's account as December 29, 2016, when the actual date was between December 12 and December 28. (*Id.* ¶ 75.) It also alleges that the letter would confuse and mislead the unsophisticated consumer as to who owned the debt on which dates. (*Id.* ¶ 76.)

## APPLICABLE RULE

PRA moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). A defendant's motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2017). Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has interpreted this language to require that the plaintiff plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Ashcroft v. Iqbal*, the Supreme Court elaborated further on the pleadings standard, explaining that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," though this "standard is not akin to a 'probability requirement.'" 556 U.S. 662, 678 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative

level." *Twombly*, 550 U.S. at 555 (internal citation omitted). Rule 12(b)(6) does not permit the court to consider matters outside the complaint without converting the motion into a motion for summary judgment. Fed. R. Civ. P. 12(d).

**ANALYSIS**

*1. The FDCPA*

The stated purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692. To that end, the FDCPA obliges debt collectors to refrain from "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e provides a non-exhaustive list of unlawful practices, including "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." § 1692e(10). Furthermore, 15 U.S.C. § 1692f forbids using "unfair or unconscionable means to collect or attempt to collect any debt."

In addition to avoiding abusive debt collection practices, the FDCPA requires debt collectors to take affirmative steps to notify debtors of their rights. In relevant part, 15 U.S.C. § 1692g requires debt collectors to provide timely written notice as follows:

(a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

7

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector.

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

In the event a consumer timely disputes the debt under (a), the debt collector must take further steps under (b):

(b) Disputed debts

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. **Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt** or request the name and address of the original creditor.

(emphasis added.)

Sections 1692e, 1692f, and 1692g(b) are all concerned with protecting consumers from confusion. The Seventh Circuit has held that "the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter." *McMillan v. Collection Prof'ls*, 455 F.3d 754, 759 (7th Cir. 2006). "'The consumer is to be protected against confusion, whatever form it takes,' be it outright contradiction, literal overshadowing, or the failure to explain an apparent

contradiction." *Olson v. Risk Mgmt. Alts. Inc.*, 366 F.3d 509, 512 (7th Cir. 2004) (quoting *Bartlett*, 128 F.3d at 500).

To state a claim under § 1692e, 1692f, or 1692g(b), a plaintiff must plausibly allege that a collection letter would materially mislead or confuse an unsophisticated consumer. "[D]ismissal is only appropriate in cases involving statements that plainly, on their face, are not misleading or deceptive." *Boucher v. Finance System of Green Bay, Inc.*, 880 F.3d 362 (7th Cir. 2018) (internal quotations and citations omitted). *See also Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012). The Seventh Circuit has cautioned that district courts should "tread carefully before holding that a letter is not confusing as a matter of law when ruling on Rule 12(b)(6) motion because 'district judges are not good proxies for the unsophisticated consumer whose interest the statute protects.'" *McMillan*, 455 F.3d at 759 (7th Cir. 2006) (quoting *Walker v. National Recovery, Inc.*, 200 F.3d 500, 501–503 (7th Cir. 1999)). "When a complaint alleges that a dunning letter is confusing . . . the plaintiff has stated a recognizable legal claim; no more is necessary to survive a Rule 12(b)(6) motion." *McMillan*, 455 F.3d at 758–59.

  *2. Count I—Plaintiff Beaufrand*

The amended complaint alleges that the second letter to Beaufrand violated the FDCPA because it was "deceptive, misleading, and confusing to the unsophisticated consumer." (*Id.* ¶ 29.) Plaintiffs allege that directing the consumer to "Call 1-800-772-1413" would encourage a consumer to dispute the debt orally rather than in writing, without informing the consumer that oral disputes do not trigger verification. (*Id.* ¶¶ 30–41.) They argue that "[t]he instruction that the consumer may communicate her dispute by telephone would confuse and mislead consumers who wish to dispute debts to believe that a debtor who disputes her debt orally is entitled to the same protections as if she had communicated her

9

dispute in writing, when she is not so entitled." (*Id.* ¶ 38.) Furthermore, the Plaintiffs allege that the second letter overshadowed the first because it did not mention the debtor's validation rights or "explain the effect of disputing the debt orally or in writing." (*Id.* ¶ 39.)

The Plaintiffs thus allege that Exhibits A and B were confusing, and under *McMillan*, that is all that is needed to state a claim unless the letter is clear on its face. Accordingly, to dismiss this claim, I would have to find that the statements are plainly *not* misleading or confusing, such that there is no possibility the Plaintiffs could produce evidence that a significant percentage of the population would be confused. My sole inquiry is whether the letter is clear on its face such that "no reasonable person, however unsophisticated, could construe the wording of the communication in a manner that . . . violates [the FDCPA]." *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 637 (7th Cir. 2012) (quoting *McMillan*, 455 F.3d at 760).

The first letter from PRA contained a validation notice that accurately set forth the requirement that the plaintiff must dispute the debt in writing to obtain verification. Several days later, PRA sent a letter purporting to collect the same debt but with no validation notice, simply an instruction on the back that said, "DISPUTES: Call . . . or write." At that point, the unsophisticated consumer likely does not remember the details of the first letter he received, including its instruction to submit disputes in writing to trigger verification. Thus, the second notice might lead an unsophisticated consumer to dispute the debt by telephone instead of in writing, thereby forfeiting the statutory right to validate the debt and compel PRA to cease collection activities. *Cf. Maniaci v. Receivable Mgmt. Servs. Corp.*, Case No. 18-CV-200, 2018 U.S. Dist. LEXIS 109087 (E.D. Wis. June 29, 2018) (denying motion to dismiss when letter told consumers they could "bring this matter to a resolution" via telephone).

PRA's defense of the language in the letters to Plaintiff Beaufrand is unavailing. In essence, PRA argues that this letter does not overshadow the validation notice because it falls outside several categories of overshadowing or contradictory language discussed in other cases. (Docket # 19 at 16–17, Docket # 23 at 2–10.) But simply distinguishing this case from other cases of overshadowing or contradiction does not answer the relevant question, which is whether the unsophisticated consumer would be materially confused or misled. Applying that standard directly, I find that the language is sufficiently ambiguous to confuse or mislead an unsophisticated consumer into disputing a debt by phone instead of in writing.

In declining to dismiss this claim, I am mindful of the Court of Appeals' instruction to tread carefully in concluding that a letter is not confusing, as "district judges are not good proxies for the 'unsophisticated consumer' whose interest the statute protects." *McMillan,* 455 F.3d at 759. Because I find that allegations in the amended complaint support a reasonable inference that an unsophisticated consumer would be materially confused by PRA's notices, I will deny the defendant's motion for judgment on the pleadings with respect to Count I.

    3. *Counts II and III—All Plaintiffs*

Count II claims that the notices sent to all the plaintiffs failed "to unambiguously inform the consumer that, in order to invoke his or her right to obtain validation of the debt, the consumer must make the request in writing to PRA, not the original creditor." (Docket # 14 ¶ 110.) The amended complaint alleges that including the name and address of the original creditor near PRA's name at the top of the notices might confuse an unsophisticated consumer as to the owner of the debt or the address to which to direct correspondence, including payments or disputes. (*Id.* ¶¶ 79–92.) Thus, Count II alleges that PRA violated 15 U.S.C. §§ 1692g, 1692g(a), and 1692g(b). Similarly, Count III claims that listing the address

11

of the original creditor next to the name of the current owner of the debt "is false, misleading and confusing to the unsophisticated consumer. Including the address of the former creditor who has no interest in the alleged debt misleads the consumer into directing disputes to the wrong party." (Docket # 14 ¶ 115–116.) Count III thus alleges that PRA violated 1692e, 1692e(2), and 1692e(10).

PRA argues that it cannot be liable for a violation of 1692g(a) because (1) it included the required validation notice in the letter, and (2) the letter explained that PRA had purchased the account and directed debtors to send all correspondence, disputes, and payments to PRA. (Docket # 19 at 9–11.) Thus, PRA argues, "[o]nly a bizarre or idiosyncratic interpretation of PRA's letter would support a reading that the letter somehow attempted to deceive Plaintiff into sending any dispute to the original creditor rather than PRA." (*Id.*)

PRA's argument that it included the required validation notice in the letter, while true, does not rebut a charge of confusion. Even a notice that contains the required validation notice might violate the FDCPA if it includes other information that could obscure the notice so as to confuse the consumer. "The unsophisticated consumer is to be protected against confusion whatever form it takes. A contradiction is just one means of inducing confusion; 'overshadowing' is just another; and the most common is a third, the failure to explain an apparent though not actual contradiction." *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) (noting that the duty to avoid confusing the consumer can be violated by "a statement that while it doesn't actually contradict the required notice obscures it, in much the same way that static or cross-talk can make a telephone communication hard to understand even though the message is not being contradicted in any way".) Thus, the question is not whether PRA

included the required notice, but whether something else about the letter obscured that notice in such a way as to confuse the unsophisticated consumer.

Judge Stadtmueller addressed a nearly identical issue in *Livermore v. Unifund CCR LLC*, No. 17-CV-1051, 2017 WL 6459483 (E.D. Wis. Dec. 15, 2017). In *Livermore*, the letter contained a block of line items similar to the ones here. The text was located directly above the salutation and consisted of the account number, the "original creditor," the "original creditor address," the "current creditor to whom the debt is owed," the balance, and the date of the last payment to the original creditor. The court dismissed the claim of confusion, reasoning:

> At the outset, the letter identifies Unifund as the sender and provides its Ohio address . . . (Unifund logo and address at the top-right). In the first sentence of the body text, Unifund explains that it is currently servicing the account. . . . Citibank's address is clearly listed as the address of the original creditor, as distinct from the "Current Creditor to Whom the Debt is Owed." . . . Even an unsophisticated consumer, reading the entire letter, would not reasonably believe that a dispute should be sent to Citibank.

*Id.* at *4.

There are several salient differences between the letter in *Livermore* and the ones here. The *Livermore* letter contained the address of the current creditor near its logo in the header; in PRA's letters, the header does not contain PRA's address. In *Livermore*, the original creditor's name and address were located nearly halfway down the page; in PRA's letters, they are at the top immediately below the PRA logo. These factors make the header of PRA's letters potentially more confusing as to the address of the sender than the one in *Livermore*.

However, there are other characteristics of PRA's letters that minimize potential confusion. Unlike the *Livermore* letter, PRA's letters include a prominently located box labeled "Various Payment Options Available Including:" that provides instructions to pay by mail:

13

"Complete the attached coupon" and "Make all checks and payments to: PORTFOLIO RECOVERY ASSOCIATES, LLC, P.O. Box 12914, Norfolk, VA 23541." Also unlike the *Livermore* letter, the bottom of the page consists of a detachable coupon with PRA's name and address; in other words, PRA pre-filled the payment address for the consumer. The letter also contains a notice in bold: "NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION." On the reverse side, the first item is an instruction to make all checks payable to PRA and send all payments to PRA at its listed mailing address. It then gives the company address, followed by an instruction to send written disputes to PRA's disputes address.

In light of these factors, the Plaintiffs' claim that consumers would be confused or misled into directing payments or disputes to the original creditor seems implausible. In fact, by providing a detachable coupon with the mailing address already pre-filled, PRA has virtually eliminated this possibility for consumers who use the coupon provided, as the letter instructs them to do. Even consumers who do not use the coupon will find PRA's payment address conspicuously placed in a box in the center of the letter with instructions to mail payments to PRA, as well as PRA's payment address displayed prominently at the top of the second page. And any recipient who follows the clear advice to "SEE REVERSE SIDE FOR IMPORTANT INFORMATION" will find PRA's dispute address and corporate address clearly stated near the top of the page. Thus, I must conclude that these letters are clear and not misleading on their face. For this reason, I will grant PRA's motion for judgment on the pleadings with respect to Counts II and III.

### 4. Count IV—Plaintiff Schneider

Count IV claims that the validation notice to Schneider "falsely states the date on which PRA purchased Schneider's account from Comenity," and that "the unsophisticated consumer would be misled as to who owned the debt and to which address to send payment." (Docket # 14 ¶¶ 121–122.) Thus, Count IV claims that PRA violated §§ 1692e, 1692e(2) and 1692e(10). (*Id.* ¶ 123.)

The parties dispute whether PRA's letter falsely represented the date of the sale. (Docket # 19 at 18–19, Docket # 21 at 24–28, Docket # 23 at 13–14.) It is unnecessary to resolve this dispute, because even if the date were false, such a misrepresentation would not have been material. The Court of Appeals has consistently held that consumers "don't need protection against false statements that are immaterial in the sense that they would not influence a consumer's decision." *Muha v. Encore Receivable Mgmt., In.*, 558 F.3d 623, 628 (7th Cir. 2009). *See also O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 942 (7th Cir. 2011); *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757–758 (7th Cir. 2009).

Accordingly, to find that this discrepancy was material, I would have to find that the alleged falsity in dates would influence a consumer's decision. To do so, I would have to assume many things about the unsophisticated consumer. I would have to assume that the unsophisticated consumer either memorized the letter from Boston Store, or kept it and scrupulously compared it to the letter from PRA received nearly two months later. I would have to assume that the unsophisticated consumer paid attention to the fact that the first letter was dated December 28. I would have to assume that the unsophisticated consumer does not understand that financial transactions can sometimes take several days to complete. I would have to assume that the unsophisticated consumer therefore concluded that the date on

Boston Store's letter was incompatible with PRA's letter stating that the sale occurred on December 29. I would then have to assume that this minor apparent contradiction outweighed the many obvious consistencies between the two letters, including: the name of the seller (Comenity Bank), the name of the merchant (Boston Store), the name of the current creditor (PRA), the account number (ending in 0198), the current balance ($676.85), the fact that the account was sold to PRA, the fact that the sale occurred in December 2016, instructions to direct all future payments and correspondence to PRA, and PRA's mailing address and website. I would have to assume that, despite all these consistencies, the apparent one-day contradiction in the date of sale would lead the unsophisticated consumer to suspect that PRA's letter was a fraud and refrain from paying the debt.

In light of the overwhelming consistency between the letters, I do not find that the Plaintiffs have asserted a claim for relief that is plausible on its face simply because, upon close scrutiny, there was some ambiguity as to the exact date of the sale. Thus, I will grant the defendants' motion for judgment on the pleadings with respect to Count IV.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that PRA's motion for judgment on the pleadings (Docket # 18) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the Plaintiffs' motions for leave to submit additional authority (Docket ## 22, 24) are **GRANTED**.

Dated at Milwaukee, Wisconsin this 20th day of November, 2018.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge